IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**



FILED

JUL 1 5 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**TOM C. SMITH, TRUSTEE FOR
THE ESTATE OF CARR & PORTER, LLC,**

    **Appellant,**

  **v.**           **CIVIL ACTION NO. 2:09cv188**

**J. RIDGELY PORTER, III,**

    **Appellee.**

### *MEMORANDUM OPINION AND ORDER*

   This matter is before the Court on appeal from the United States Bankruptcy Court for the

Eastern District of Virginia, Chapter 7 Case No. 07-70238-SCS. Appellant Tom C. Smith,

Trustee ("Trustee") for the Estate of Carr & Porter, LLC ("Debtor") appeals from a March 17,

2009 Memorandum Opinion and Order granting J. Ridgely Porter, III's Motion for Summary

Judgment and denying the Trustee's Motion to Amend. For the reasons set forth below, the

Bankruptcy Court's conclusions of law and findings of fact are **AFFIRMED**.

### I. FACTUAL & PROCEDURAL HISTORY

   The Debtor was a law firm in the City of Portsmouth, Virginia, whose sole owner was J.

Ridgely Porter, III. On February 14, 2005, Porter entered into an agreement ("Agreement") with

the Debtor, Kelly L. Daniels-Sheeran, and Matthew Pethybridge, who were two attorneys with

the firm. Pursuant to the Agreement, which took effect on March 31, 2005, Porter was to receive

$1,000,000.00, which was to be paid by the Debtor over a period of five years in 119 installments

of $8,333.33, plus a final installment of $8,333.73, pursuant to a promissory note ("Note").

From the time of the execution of the Agreement until July 15, 2006, Porter received $255,500.00 from the Debtor. In exchange for that sum, Porter transferred his equity interest in the Debtor to these two attorneys. Porter was to continue to be employed by the Debtor, with his compensation to be determined by a formula based on his collected fees.

The Debtor subsequently experienced financial difficulties and filed a petition in bankruptcy on February 8, 2007. The Trustee was appointed the interim chapter 7 trustee and initiated this action against Porter on May 7, 2008, seeking to recover the payments received by Porter prior to the Debtor's bankruptcy. The Trustee argued that Porter was an "insider" under Section 547(b) of the Bankruptcy Code, and alternatively, that the payment could be set aside under Section 55-81 of the Virginia Code because it violated the state's voluntary transfer law.

Porter filed a Motion for Summary Judgment on October 10, 2008, and a hearing was held on November 3, 2008. On November 4, 2008, the Trustee filed a Motion to Amend, and a hearing was held on December 11, 2008. On March 17, 2009, the Bankruptcy Court granted the Motion for Summary Judgment and denied the Motion to Amend.

## II. STANDARD OF REVIEW

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 158(a)(1). A district court reviews a bankruptcy court's decisions of law *de novo* and its findings of fact for clear error. *See In re Meredith*, 527 F.3d 372, 375 (4th Cir. 2008); *In re Phinney*, 405 B.R. 170, 175 (E.D. Va. 2009); *BNY, Capital Funding, LLC v. US Airways, Inc.*, 345 B.R. 549, 552 (E.D. Va. 2006). Decisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion. *See In re Morris*, 385 B.R. 823, 828 (E.D. Va. 2008); *Boleman Law Firm, P.C. v. U.S. Trustee*, 355 B.R. 548, 551 (E.D. Va. 2006).

2

### III. DISCUSSION

The Trustee seeks review of the Bankruptcy Court's March 17, 2009 Memorandum

Opinion and Order (1) denying the Motion to Amend as untimely and prejudicial, and (2)

granting the Motion for Summary Judgment in Porter's favor on both counts of the Complaint.

For the reasons set forth below, the Bankruptcy Court's conclusions of law and findings of fact

are **AFFIRMED**.

### A.    Notice of Appeal

As an initial matter, Porter argues that the Notice of Appeal is fatally defective because it

fails to properly identify (1) the appellee, and (2) the matter to be appealed.  The Trustee

concedes these defects, but argues that dismissal is inappropriate because the Notice of Appeal

was timely, Porter suffered no prejudice from the errors, and dismissal would be unreasonably

harsh.

Rule 8001(a) of the Bankruptcy Rules provides that a Notice of Appeal must "(1)

conform substantially to the appropriate Official Form [and] (2) contain the names of all parties

to the judgment, order, or decree appealed from and the names, addresses, and telephone

numbers of their respective attorneys." Appellant's Notice of Appeal reads:

> Tom C. Smith, Trustee for the Estate of Carr & Porter, LLC, by counsel, appeals to
> the United States District Court for the Eastern District of Virginia from the final
> decision of the Bankruptcy Court denying the plaintiff's Complaint to Determine
> Dischargeability of Debt and plaintiff's Motion to Amend, which Orders were
> entered on or about March 17, 2009.  The parties to the decision appealed from and
> the names and address of their respective attorneys, if any, are as follows:

The Trustee then listed the counsel for himself and Porter, along with counsels' addresses, but

failed to name the parties.

3

Porter cites *In re United Refuse LLC*, 171 F. App'x 426 (4th Cir. 2006) for the proposition that an appeal must be dismissed where the notice of appeal does not name the party continuing to seek review. However, that case is distinguishable from the facts here. In *United Refuse LLC*, there were several parties to the bankruptcy proceedings, and the Notice of Appeal specified only two parties as the parties on appeal. The District Court dismissed the appeal of two other parties to the bankruptcy proceedings, who were not designated as parties on appeal, reasoning that the Notice of Appeal did not name them as appellants, express their intent to appeal, or establish privity between them and the named appellant. The District Court then confined the Notice of Appeal to the named appellant, and this decision was upheld by the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit").

In the instant case, there were only two parties in the case before the Bankruptcy Court; two orders entered on March 17, 2009 with respect to these parties; and counsel for each of those parties was specified on the Notice of Appeal. Even though the Notice of Appeal was poorly drafted, there can be no doubt which matters the Trustee intended to appeal from and against which appellee (as there could only be one). There is not the same potential for confusion here that concerned the Court in *United Refuse LLC*. Indeed, Porter does not contend that he suffered any confusion or was prejudiced in any way by the defective Notice of Appeal. Other courts have held that "failure of complete, literal conformity to Rule 8001(a)" is not "unforgivable." *See Fadayiro v. Ameriquest Mortgage Co.*, 371 F.3d 920 (7th Cir. 2004) (holding dismissal of appeal was erroneous where appellant did supply the required information but not in the prescribed format). Accordingly, the Court finds that dismissal of the appeal on this basis is not appropriate.

4

**B.**     **Motion to Amend**

During the hearing on the Motion for Summary Judgment, the Bankruptcy Court inquired whether Count One of the Complaint, in addition to stating a claim under Section 547(b) of the Bankruptcy Code, also stated a claim under Section 548. Porter argued that Count One asserted only a single cause of action, and that any amendment to assert a new count would be untimely and should not be permitted. The Trustee argued that the Complaint stated facts sufficient to establish a claim under Section 548. The day following the hearing, the Trustee filed a Motion to Amend the Complaint, arguing that the Complaint already states a claim pursuant to Section 548, and requesting leave to state with greater specificity the relief sought. Porter filed a Memorandum in Opposition, arguing that the Complaint does not state such a claim and that the Motion is untimely and prejudices Porter.

The Bankruptcy Court found that, despite the liberal standard of notice pleading under Rule 8 of the Federal Rules of Civil Procedure, the Complaint as originally filed did not state a claim under Section 548. The Bankruptcy Court found that despite references to Section 548 in the preamble of the Complaint, such references largely disappeared after such mention; that the Complaint contained only two counts and clearly stated causes of action under 11 U.S.C. § 547 and Va. Code Ann. § 55-81; that the prayer for relief under Count One seeks a measure of damages consistent with Section 547 (amount preferentially transferred during one year) and inconsistent with Section 548 (full amount transferred while Debtor was insolvent); and that Section 548 was not designated as a cause of action on Official Form 104.

The Bankruptcy Court further found that the Motion to Amend was untimely and would cause undue delay, as it was filed after argument on the Motion for Summary Judgment and after

5

the deadline for filing motions prior to the trial date had passed. The Bankruptcy Court also found that granting such Motion to Amend would prejudice Porter, because the Motion for Summary Judgment was fully briefed and argued with the understanding that Section 548 was not at issue, and discovery was closed and Porter had taken no discovery with regard to a Section 548 claim. Accordingly, the Bankruptcy Court denied the Trustee's Motion to Amend.

On appeal, the Trustee argues that the Bankruptcy Court abused its discretion in denying the Trustee's Motion, or alternatively, in finding that the pleadings were insufficient to state a claim under Section 548. The Trustee contends that an amendment would not prejudice Porter because (1) no new factual allegations would be pled, but merely more specific information regarding the legal basis for the relief being sought on the facts already pled; and (2) no trial date was scheduled and Appellant stated he would not oppose a request for additional discovery.

The Trustee cites *Forman v. Davis*, 371 U.S. 178 (1962) and *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274 (4th Cir. 1987) for the proposition that Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be "freely given when justice so requires." However, these cases state that leave to amend shall be freely given "in the absence of any . . . undue delay, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Forman*, 371 U.S. at 182. The Trustee argues that the delay in *Forman* and in *Island Creek Coal* was much more severe than the delay in this case, and that the prejudice in *Island Creek Coal* was much greater because the amendment would fundamentally change the issues in that case. The Trustee also cites *Island Creek Coal* and *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) for the proposition that delay alone is not a sufficient reason for a court to deny leave to amend, and that there must be prejudice to the non-moving party, bad

6

faith by the moving party, or the amendment must be futile.

In this case, the Bankruptcy Court applied Rule 8 of the Federal Rules of Civil Procedure and determined that the Complaint did not fairly give notice to Porter that the Trustee was proceeding against him on a fraudulent conveyance claim pursuant to 11 U.S.C. § 548. The Bankruptcy Court analyzed the Complaint in great detail, and provided several reasons it does not state a cause of action under Section 548. This Court finds that the Bankruptcy Court did not abuse its discretion in making this determination.

The Bankruptcy Court next recognized Rule 15(a)'s liberal standard, and acknowledged that delay alone is not a sufficient reason to deny leave to amend. However, after considering the facts of this case, the Bankruptcy Court ultimately determined that granting leave to amend would cause both undue delay and undue prejudice. The Bankruptcy Court considered the timing of the Motion, given that a Motion for Summary Judgment had already been briefed and argued, that discovery had closed, and that the deadline for filing motions prior to trial had passed. The Bankruptcy Court also considered the fact that the Motion for Summary Judgment made clear that Porter believed the Complaint pled only two counts, and that the Motion intended to address all issues in the case, and that the Trustee did not make a Motion to Amend at that time or otherwise suggest that Porter was mistaken. The Bankruptcy Court also compared the elements of 11 U.S.C. § 548 to § 547 and Virginia Code § 55-81, and concluded that the proof required to defend against this new claim was different, and that Porter had not taken discovery with regard to such issues. Given the totality of the circumstances, this Court cannot find that the Bankruptcy Court abused its discretion by disallowing an amendment. The Bankruptcy Court's denial of the Motion to Amend is **AFFIRMED**.

7

C.     **Motion for Summary Judgment**

The Bankruptcy Court's ruling on the Motion for Summary Judgment is a legal

conclusion that this Court reviews *de novo*. First, the Bankruptcy Court found that Porter was

not an "insider" and granted summary judgment to Porter on the 11 U.S.C. § 547 claim. Second,

the Bankruptcy Court found that the Debtor received valuable consideration for the transfer, and

that there were no creditors at the time of the transaction, and dismissed the claim under Virginia

Code § 55-81.

1.     **Count One**

In his Motion for Summary Judgment, Porter argued that in order to find liability under

11 U.S.C. § 547, it is required that Porter be an "insider" at the time of the transfer, which he was

not, as he relinquished all management authority pursuant to the Agreement. The Trustee argued

that Porter was an insider based on his actions prior and subsequent to the transfer, including

dictating the terms of the sale, arranging the loan on behalf of the Debtor and a second loan once

the firm was suffering financially, continuing to work as a lawyer for the firm, acting as the

contact attorney for the Debtor's major client, and being generally involved in the Debtor's

financial affairs.

Section 547(b) of the Bankruptcy Code provides that "the trustee may avoid any transfer

of an interest of the debtor in property to or for the benefit of a creditor . . . made . . . between

ninety days and one year before the date of the filing of the petition, if such creditor at the time of

such transfer was an insider." The Bankruptcy Code defines an insider as an "affiliate, or insider

of an affiliate if such affiliate were the debtor" or a "managing agent of the debtor." 11 U.S.C. §

101(31)(E) and (F). An affiliate is an "entity that directly or indirectly owns, controls, or holds

8

with power to vote, 20 percent or more of the outstanding voting securities of the debtor." *Id.* at §
101(2)(A). Furthermore, if the debtor is a corporation, the term insider also includes a director or
officer of the debtor, person in control of the debtor, partnership in which the debtor is a general
partner, general partner of the debtor, or a relative of a general partner, officer, director, or person
in control of the debtor. *Id.* at § 101(31)(B).

Given the nonexclusive definition of "insider" contained in the Bankruptcy Code, courts
conduct a factual inquiry to determine the closeness of the relationship and whether the
transaction was conducted at "arm's length" to determine whether it was an insider transfer. *See
Butler v. David Shaw, Inc.*, 72 F.3d 437 (4th Cir. 1996); *In re Three Flint Hill Ltd. P'ship*, 213
B.R. 292 (D. Md. 1997). The Fourth Circuit has held that "the alleged insider 'must exercise
sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the
disposition of corporate assets.'" *Butler*, 72 F.3d at 443 (quoting *In re Babcock Dairy Co.*, 70
B.R. 662, 666 (Bankr. N.D. Ohio 1986)). The relationship must involve considerable control on
the part of the alleged insider, and "mere financial power over [a] debtor" does not necessarily
make someone an insider. *See In re Practical Inv. Corp.*, 95 B.R. 935 (E.D. Va. 1989).

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole,
determines "that there is no genuine issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin N. Am.,
Inc.*, 252 F.3d 696, 702 (4th Cir. 2001) (citing *McKinney v. Bd. of Trustees of Mayland Cmty.
Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) ("[S]ummary judgments should be granted in those
cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not
necessary to clarify the application of the law.")).

9

In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Any such affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).

Along with his Motion for Summary Judgment, Porter submitted two affidavits: one from himself (the "Porter Affidavit") and one from Christine Tribble, the former administrator of the Debtor (the "Tribble Affidavit"). The Porter Affidavit states that pursuant to the Agreement, Porter "relinquished all executive authority to the new purchasers . . . [and] was not a director, officer, a person in control of the Debtor, or a relative of those in control of the Debtor." Porter Affidavit ¶ 3. The Porter Affidavit further states that Porter had no authority to examine the Debtor's books and records except when permitted by the new owners, and had no control over business decisions. *Id.* at ¶¶ 6-7. Additionally, the Porter Affidavit provides that the employment agreement between the Debtor and Porter states that "he shall have no responsibility for the management or supervision of the operation or other employees of [the Debtor]." *Id.* ¶ 11. The Tribble Affidavit states that "[a]fter the sale, the management of the firm was in the hands of Ms. Sheeran and Mr. Pethybridge, and Mr. Porter no longer functioned in any management capacity other than to offer advice." Tribble Affidavit ¶ 4. It further provides that "[a]fter the

10

sale, Mr. Porter functioned as an employee of the Debtor and did not possess or attempt to exercise managerial authority other than to offer advice." *Id.* at ¶ 9.

Attached to the Trustee's Response to the Motion for Summary Judgment is an affidavit from Kelly Daniels-Sheeran (the "Sheeran Affidavit"). The Sheeran Affidavit provides that "the loan with SunTrust Bank was arranged by Porter as well as the subsequent line increase in March 2006"; that "Porter met on a regular basis with [Tribble] and gave her directions regarding the firm's finances . . . until July 2006"; that "Porter remained the responsible attorney and point of contact for [the VDOT work] until April 2006 . . . [which] was the primary source of income for [the Debtor]"; that "on or about May 2006, Porter contacted SunTrust Bank and requested that SunTrust Bank loan [the Debtor] funds to buy out his note"; and that "after the sale of the interest in [the Debtor], Porter continued on as an attorney for which he was paid with [the Debtor], maintaining and office, sharing staff, and assisting with financial matters concerning the firm." Sheeran Affidavit ¶¶ 3-9.

On appeal, the Trustee contends that the Sheeran Affidavit raises sufficient facts to establish an issue of whether Porter was an insider, and that the Bankruptcy Court erred in finding no genuine dispute over a material fact.

The Court finds that the Trustee's facts, as set forth in the Sheeran Affidavit, are insufficient to demonstrate a genuine issue of whether Porter had enough authority over the Debtor to render him an insider. The Fourth Circuit addressed this issue in a case with remarkably similar facts. In *Butler v. David Shaw, Inc.*, a sole shareholder sold his entire interest in the company to a purchaser. In exchange, the former owner received cash, a promissory note, a stock option, and employment for himself and his wife. 72 F.3d 437, 439-40 (4th Cir. 1996).

11

The former owner retained the title of manager, but "[h]e did not make personnel decisions, did not handle the payroll or accounts receivable, and was otherwise uninvolved in the management of the business." *Id.* at 443. In *Butler*, the Court rejected the Trustee's argument that the former owner was an "insider" because he did not "'exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets.'" *Id.* (quoting *In re Babcock Dairy Co.*, 70 B.R. 662, 666 (Bankr. N.D. Ohio 1986)). The Fourth Circuit was also concerned about public policy implications, explaining that the Trustee's approach would "expand the statutory definition of the term 'insider' in a manner that leads to an unduly litigious result" and stating "we are loathe to adopt an interpretation of the bankruptcy code that would blur the line established by 11 U.S.C.A. § 101(2)(A), (31)(E)." *Butler*, 72 F.3d at 442.

Other decisions have examined the issue of whether evidence regarding a former owner's continued involvement as an employee is sufficient to demonstrate insider status. In *In re Babcock Dairy Co.*, the court held that an employee who "reviewed the Debtor's accounts receivable and conducted work that related to the Debtor's customers" but who "had no authority to dispose of corporate assets" and did not "prevail in any decisions regarding the operation of the Debtor's business" was "merely an employee of the Debtor who was the beneficiary of a favorable employment contract." 70 B.R. 662, 667-68 (Bankr. N.D. Ohio 1986)). The court noted that such arrangement would "naturally result from the fact that [he] was familiar with the Debtor's customers and could be of benefit to the company in that regard." Therefore, the court held that he did not have "any meaningful control of the Debtor" and concluded that he was not an insider. *Id.* at 668. *See also Gray v. Giant Wholesale Corp.*, 758 F.2d 1000 (4th Cir. 1985) (holding employee who controlled dispensation of debtor's checks was not an insider); *In re*

12

*Sullivan Haas Coyle, Inc.*, 208 B.R. 239 (Bankr. N.D. Ga. 1997) (holding that financial consultants who worked daily with debtor, who advised on all financial matters, assisted debtor in acquiring financing, and frequently communicated with debtor's bank and creditors, were not insiders).

The Sheeran Affidavit alleges that Porter continued to be employed by the Debtor, that he assisted in financial matters, including advising the bookkeeper and contacting the bank about financing, and that he continued to interact with the most significant client. These facts are insufficient to demonstrate a genuine issue regarding Porter's status as an insider. As no material facts are in dispute, Porter is entitled to summary judgment on Count One. Accordingly, the Bankruptcy Court's decision with respect to Count One is **AFFIRMED**.

    **2.**    **Count Two**

In his Motion for Summary Judgment, Porter argued that the claim under Virginia Code § 55-81 fails because (1) there were no existing creditors at the time of the transaction, and (2) the Debtor received valuable consideration as a result of the Agreement.

> The statute provides that
>
> Every gift, conveyance, assignment, transfer, or charge which is not upon consideration deemed valuable in law . . . by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made. Even though it is decreed to be void as to a prior creditor, . . . it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

Va. Code Ann. § 55-81 (2008). In order to void a transaction pursuant to this section, there must be a showing of indebtedness at the time of the transaction. *See C.F. Trust v. Peterson*, No.

1:97cv203, 1999 WL 33456231, at *10 (E.D. Va. Jan. 8, 1999); *In re Porter*, 37 B.R. 56, 65 (Bankr. E.D. Va. 1984). Furthermore, there must have been no "consideration deemed valuable in law," which is not required to be reasonably equivalent to whatever has been exchanged. Consideration under § 55-81 requires only that something of value was gained. *See In re James River Coal Co.*, 360 B.R. 139, 167 (Bankr. E.D. Va. 2007); *In re Wellington Apartment, LLC*, 350 B.R. 213, 245 (Bankr. E.D. Va. 2006).

The record reflects that the February 14, 2005 Agreement states that the closing date of the transaction was March 31, 2005. As part of the Agreement, the parties signed a "final calculation" of the Debtor's assets on April 1, 2005, which states that there are no accounts payable. The new owners, Sheeran and Pethybridge, executed a new loan document with SunTrust Bank on March 31, 2005 which provides that there are "no disbursements at this time." Both the Porter and the Tribble Affidavits state that the Debtor had no existing creditors at the time of the transaction between Porter and the Debtor.

In opposition to the Motion for Summary Judgment, the Trustee offered the Sheeran Affidavit, which states that effective April 1, 2005, Debtor had a note payable to Porter "for $1,000,000.00 and a line of credit for $150,000.00 with SunTrust Bank, as well as lease obligations, accrued tax obligations, and various small debts to vendors." The Bankruptcy Court found that while the Trustee alleged debt existing as of April 1, 2005, this date is "after the closing and consummation of the transaction of the Debtor with Porter," thus eliminating the Trustee's claim under Section 55-81.

On appeal, the Trustee argues that the transaction occurred in two parts: (1) the Agreement creating the obligation to Porter and the transfer of interest to Sheeran and

14

Pethybridge was effective March 31, 2005; and (2) the bi-monthly payments of $8,333.33 to Porter beginning in May 2005. Therefore, the Trustee argues, the "transfers" to be avoided are the payments made starting in May 2005, which occurred after the Debtor had existing indebtedness to SunTrust Bank. The Trustee cites no authority in support of this argument, and the Court does not find it persuasive. The record reflects that the payments made to Porter were not separate transactions; rather, they constituted the Debtor's performance of the Agreement effective on March 31, 2005 and occurred pursuant to that Agreement. It is not disputed that the Debtor had no indebtedness when the Agreement became effective. Accordingly, the Court finds that the Bankruptcy Court correctly determined that the Debtor did not have existing creditors at the time of the transaction, such that the Trustee could not prevail on a claim under Section 55-81.

Alternatively, the Bankruptcy Court found that the Section 55-81 claim failed because the transaction was supported by consideration deemed valuable in law. In his Motion for Summary Judgment, Porter argued that the Debtor received several assets as a result of the transaction: (1) continuation of business as opposed to liquidation; (2) retention of right to bill and collect accounts receivable; (3) retention of right to bill and collect work in progress; (4) retention of existing legal staff; (5) maintenance of established client base; (6) retention of experienced clerical and administrative staff; (7) retention of established goodwill; (8) employment agreements with Porter and Tribble; (9) new management; (10) retention of physical assets such as furniture, fixtures, equipment, and law books. Porter essentially argued that as the sole shareholder of the Debtor, he could have liquidated the company and transferred its assets to himself. Furthermore, by forgoing this option and allowing the business to continue with the

15

tangible and intangible assets and its staff, Porter provided consideration to the Debtor. In response, the Trustee relied on the Sheeran Affidavit, which states that Debtor "received nothing new from Porter after the sale other than the note obligation to Porter." Sheeran Affidavit ¶ 10. The Bankruptcy Court held that the Trustee's assertion that the Debtor obtained "nothing new" does not factually rebut Porter's assertion that the Debtor received consideration from Porter. The Bankruptcy Court further found that the evidence established that the Debtor received consideration deemed valuable at law, such that the Trustee could not prevail under Section 55-81.

On appeal, the Trustee argues that the Bankruptcy Court's finding of consideration was clear error because the Debtor did not gain anything from the transaction, and all of the items listed by Porter "either represented a maintaining of the status quo or a loss to the entity."

It is well-established in Virginia that "[a] promise to forbear the exercise of a legal right is adequate consideration to support a contract." *See Hamm v. Scott*, 515 S.E.2d 773, 774 (Va. 1999) (citing *Greenwood Associates, Inc. v. Crestar Bank*, 448 S.E.2d 399, 402 (Va. 1994)). Such agreement may be implied by the parties' actions and the nature of the transaction. *See Troyer v. Troyer*, 341 S.E.2d 182, 185 (Va. 1986). The fact that Porter could have liquidated the Debtor, a fact that has not been contested, but opted to forgo this right to allow the entity to continue operating, collecting funds, maintaining its employees and clients, retaining goodwill, etc. constitutes consideration. In addition, the transaction resulted in the Debtor gaining new management and new employment agreements. The Court finds that the Trustee's argument that the Debtor received no consideration is without merit. Therefore, the Court finds that the Bankruptcy Court correctly determined that there was consideration deemed valuable in law,

16

such that the Trustee could not prevail on a claim under Section 55-81. Accordingly, the Bankruptcy Court's decision with respect to Count Two is **AFFIRMED**.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that dismissal of this appeal based on the defective Notice of Appeal is not appropriate. The Court further finds that the Bankruptcy Court did not abuse its discretion by denying the Motion to Amend. In addition, the Bankruptcy Court was correct in granting the Motion for Summary Judgment. Accordingly, the decision of the Bankruptcy Court below is **AFFIRMED** and the appeal is **DISMISSED**.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion & Order to the parties.

IT IS SO **ORDERED**.

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
July /5, 2009

17